67 F.3d 296
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Willis R. PERTEE; Rebecca A. Pertee, his wife, Plaintiffs,
v.
GOODYEAR TIRE & RUBBER COMPANY, a foreign corporation,
Defendant & Third Party Plaintiff-Appellee,
v.
DOVER ELEVATOR COMPANY, Third Party Defendant-Appellant.
 No. 94-2061.
 United States Court of Appeals, Fourth Circuit.
 Oct. 2, 1995.
 
 David A. Mohler, CAMPBELL, WOODS, BAGLEY, EMERSON, MCNEER & HERNDON, Charleston, West Virginia, for Appellant.
 Evans Leon King, Jr., STEPTOE & JOHNSON, Clarksburg, West Virginia, for Appellee. ON BRIEF: Steven P. McGowan, Jeffrey K. Phillips, STEPTOE & JOHNSON, Charleston, West Virginia, for Appellee.
 Before HALL and MOTZ, Circuit Judges, and WILLIAMS, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Dover Elevator Company ("Dover") appeals from the district court's grant of summary judgment to the Goodyear Tire & Rubber Company ("Goodyear"). In granting Goodyear's motion, the district court found that Dover was obligated to indemnify Goodyear pursuant to a Master Maintenance Agreement between the parties. For the reasons stated below, we affirm the judgment of the district court in its entirety.
 
 I.
 
 2
 On February 23, 1989, Dover issued to Goodyear a document entitled "Agreement for Dover Master Maintenance Service" (hereinafter referred to as "Master Maintenance Agreement" or "Agreement"). The relevant portion of that document provides as follows:
 
 
 3
 It is understood, in consideration of our performance of the service enumerated herein at the price stated, that nothing in this agreement shall be construed to mean that we assume any liability on account of accidents to persons or property except those directly due to negligent acts of Dover Elevator Company or its employees, and that your own responsibility for accidents to persons or properties while riding on or being about the aforesaid equipment referred to, is in no way affected by this agreement.
 
 
 4
 * * *
 
 
 5
 This instrument contains the entire agreement between the parties hereto.... All prior negotiations or representations, whether written or verbal, not incorporated herein are superseded. No changes in or additions to this agreement will be recognized unless made in writing and signed by both parties.
 
 
 6
 Should your acceptance be in the form of a purchase order or a similar document, the provisions, terms and conditions of this agreement will govern in the event of conflict.
 
 
 7
 * * *
 
 
 8
 ACCEPTANCE BY YOU AND SUBSEQUENT APPROVAL BY AN EXECUTIVE OFFICER OF DOVER ELEVATOR COMPANY WILL BE REQUIRED BEFORE THIS AGREEMENT BECOMES EFFECTIVE.
 
 
 9
 On March 28, 1989, Goodyear issued to Dover a purchase order "to cover the cost of elevator maintenance per Dover Ele proposal dated 2-23-89." On the front of the order is the following language under the heading "IMPORTANT NOTICE TO SELLER":
 
 
 10
 This purchase order is expressly made subject to, and your acceptance is strictly limited to, the terms and conditions stated herein, including the terms and conditions stated on the reverse side hereof.
 
 
 11
 On the reverse side of the order is paragraph thirteen (13) which provides:
 
 
 12
 To the extent that this Purchase Order calls for work to be performed upon property owned or controlled by Purchaser, it is agreed that:
 
 
 13
 * * *
 
 
 14
 (d) Seller will indemnify, save harmless and defend Purchaser from all liability for loss, damage or injury to person or property in any manner arising out of or incident to the performance of this Purchase Order.
 
 
 15
 * * *
 
 
 16
 (f) To the extent that this Purchase Order provides that Seller will indemnify, save harmless and defend Purchaser from liability, claims, demands or suits, it is the intention of Seller that such indemnity shall apply, to the extent permitted by law, whether or not the liability, claims, demands or suits arise out of the negligence of purchaser.
 
 
 17
 * * *
 
 
 18
 After the March 28, 1989 purchase order, Goodyear issued two additional purchase orders which contained the same indemnification language. Upon receiving each purchase order, Dover performed the requested maintenance. To this end, Dover employed Willis R. Pertee as an elevator repairman's helper.
 
 
 19
 On April 19, 1991, while Pertee and a co-worker were performing routine maintenance on one of Goodyear's elevators at Goodyear, Pertee twisted and injured his right knee. On April 19, 1993, Pertee brought a personal injury claim against Goodyear alleging that Goodyear negligently maintained an unsafe work environment. Goodyear filed a third-party complaint against Dover alleging that Dover had a contractual duty to indemnify Goodyear based on the indemnity language on the back of Goodyear's purchase orders. Dover refused to indemnify Goodyear because of language in its Master Maintenance Agreement, which specifically precluded the assumption of any liability of Dover.
 
 
 20
 On May 10, 1994, Dover filed a motion for summary judgment and Goodyear filed a cross motion for summary judgment. By Order entered July 21, 1994, the United States District Court for the Southern District of West Virginia, Parkersburg Division, denied Dover's motion for summary judgment and granted Goodyear's motion for summary judgment. Specifically, the district court concluded that because the Master Maintenance Agreement did not preclude the separate indemnity contract reflected in the purchase orders, "Goodyear had a clear and unequivocal right to indemnification." JA at 62. Dover timely appealed to this Court.
 
 II.
 
 21
 We review the grant of summary judgment de novo on appeal. Jackson v. Kimel, 992 F.2d 1318, 1322 (4th Cir.1993). Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing the grant of summary judgment, we are not bound by the theories of law that the lower court adopted. Farnwell v. Un, 902 F.2d 282 (4th Cir.1990). Rather, we can affirm on any legal ground supported by the record. Jackson, 992 F.2d at 1322.
 
 
 22
 Dover's principal contention is that the district court erred in granting summary judgment to Goodyear because Dover did not expressly show an intention to indemnify Goodyear. Dover concedes that the contract between the parties controls but urges that because Goodyear, in its purchase orders, referred to the Master Maintenance Agreement, the Agreement controls.
 
 
 23
 The district court examined the documents and concluded that Goodyear's purchase orders formed the basis of the contract between the parties. The district court reasoned that since Goodyear's purchase orders varied the terms in Dover's Master Maintenance Agreement, the purchase order represented a counteroffer for Goodyear's elevator maintenance. See John D. Stump & Associates, Inc. v. Cunningham Mem. Park, 419 S.E.2d 699, 705 (W.Va.1992). Thus, the district court concluded, by performing the elevator maintenance Dover accepted the terms reflected in Goodyear's purchase orders.
 
 
 24
 We agree with the district court's reasoning. While there are two separate writings, here the parties are the same, the subject matter is the same and the relationship between the documents is clearly apparent in each writing. We construe the writings together and consider them to constitute one transaction. See Ashland Oil, Inc. v. Donahue, 223 S.E.2d 433, 437 (W.Va.1976); Art's Flower Shop, Inc. v. Chesapeake and Potomac Tel. Co. of West Virginia, 413 S.E.2d 670 (W.Va.1991).
 
 
 25
 We are more convinced of the applicability of the rule here as "[a] fair reading of the documents discloses that they are so interrelated on their face that either, standing alone, would be meaningless without the other." Ashland, 223 S.E.2d at 437. The purchase orders Goodyear issued to Dover were issued "per" Dover's elevator maintenance proposal. The purchase orders clearly contained inconsistent provisions. The general rule is that
 
 
 26
 [w]here a new contract is made with reference to the subject-matter of a former contract, containing provisions clearly inconsistent with certain provisions of the original contract, the obligations of the earlier contract, in so far as they are inconsistent with a later one, will be abrogated and discharged, and the two contracts will be construed together, disregarding the provision of the original which are inconsistent with those of the latter.
 
 
 27
 Consolidation Coal Company v. Mineral Coal Company, 126 S.E.2d 194, 201 (W.Va.1962) (internal quotation marks and citations omitted). Moreover, this rule is especially applicable here since Dover retained the final decision of whether the Agreement would become effective. The subsequent purchase orders did not vary Dover's requirement of final approval by a Dover executive.
 
 
 28
 Finally, while Dover argues that Pertees' injuries were due solely to Goodyear's negligence, "[c]ontracts of indemnity against one's own negligence do not contravene public policy and are valid in West Virginia." Sellers v. Owens-Illinois Glass Company, 191 S.E.2d 166, 168 (W.Va.1972). This general rule holds as long as the indemnifying language clearly and definitively shows an intention to indemnify against liability. Sellers, 191 S.E.2d at 169. Under this standard, our proper focus is not on which party is negligent, but rather on ascertaining and giving effect to the parties' intention. Id. (citations omitted).
 
 III.
 
 29
 Next, Dover urges that its intention not to indemnify Goodyear is further evidenced by Virginia's worker's compensation law. See W. Va.Code Sec. 23-2-6. Under this theory, Dover argues that even if it had been negligent, it would be immune from liability under the worker's compensation law. Dover never briefed, argued or in any other manner raised the issue below that the plain language of this statute precluded it from liability. Since we see no reasons to depart from the usual rule that "ordinarily an appellate court will not consider an issue not raised in the court from which the appeal is taken", we decline to address this argument for the first time on appeal. United States v. Eades, 615 F.2d 617, 621 n. 4 (4th Cir.1980), reh'g en banc, 633 F.2d 1075, cert. denied, 450 U.S. 1001 (1981). Nor, as Dover further suggests, will we permit Dover to posit that it inferentially raised the issue that the statute precluded the liability imposed upon it by the indemnifying language in Goodyear's purchase orders.
 
 IV.
 
 30
 The only issue properly before us is whether Goodyear is entitled to indemnity under a fair reading of both documents. Having construed both documents, we conclude that Goodyear's purchase orders were a counteroffer to Dover's Master Maintenance Agreement. West Virginia courts have long held that an acceptance which varies the terms of the offer is no acceptance at all but, rather, a counteroffer. See John D. Stump & Assoc., 419 S.E. at 705; Stark Electric, Inc. v. Huntington Housing Authority, 375 S.E.2d 772, 774 (W.Va.1988) (quoting Bowers Co. v. Kanawha Valley Prod. Co., 130 S.E. 284 (W.Va.1925)). Since Goodyear issued its purchase orders in response to Dover's Master Maintenance Agreement, the purchase orders control any inconsistent terms in the separate writings. That Goodyear referred to the Agreement is not dispositive. When Dover performed elevator maintenance for Goodyear, it accepted the indemnity terms set forth in Goodyear's purchase orders. See First National Bank of Gallipolis v. Marietta Mfg Co., 153 S.E.2d 172, 176 (W.Va.1967); Magruder v. Hagen-Ratcliff & Co., 50 S.E.2d 488, 495 (W.Va.1948) (parties may infer acceptance by their acts or conduct). Pursuant to the terms of the purchase orders Goodyear is entitled to indemnity.
 
 
 31
 Accordingly, the District Court properly granted Goodyear's motion summary judgment.
 
 V.
 
 32
 For the foregoing reasons, the judgment of the United States District Court for the Southern District of West Virginia, Parkersburg Division is affirmed.
 
 AFFIRMED