# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**John W. Parker,**
**Defendant Below, Petitioner**

**vs)  No. 13-0428** (Jackson County 12-C-40)

**Brent D. Sayre, Plaintiff Below, Respondent**
**and Marc J. Slotnick,**
**Defendant Below, Respondent**

**FILED**

November 22, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner John W. Parker, by counsel Marvin W. Masters and Charles M. Love, IV, appeals the order of the Circuit Court of Jackson County, entered March 21, 2013, that granted summary judgment in favor of Respondent Brent D. Sayre in Respondent Sayre's breach of contract action against petitioner and Respondent Marc J. Slotnick. Petitioner was the purchaser of real property at a foreclosure sale. However, in the order on appeal, the circuit court rescinded petitioner's deed and awarded the property to Respondent Sayre who was the other bidder at the foreclosure sale. Respondent Slotnick, an attorney who served as the trustee at the sale, does not make an appearance herein.[1] Respondent Sayre, by counsel Leah A. Chappell, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case arises from a February 22, 2012, foreclosure sale of a 130-acre property in Jackson County known as the "Click Farm" or "Garrett Farm." In 1993, Charles and Alma Garrett[2] executed a deed of trust for the property which provided that, upon default of the principle obligation, a trustee shall "sell the real estate herein described and herein conveyed at public auction *for cash* to the highest bidder at the front door of the Courthouse . . . after first having published notice of the time, place and *terms of sale* . . . ." (Emphasis added.)

---

[1]Respondent Slotnick did bring his own separate appeal against Respondent Sayre. *See Marc J. Slotnick v. Brent D. Sayre*, No. 13-0404 (W.Va. Supreme Court, November _, 2013) (memorandum decision).

[2]Charles and Alma Garrett were not parties to Respondent Sayre's action for breach of contract.

1

In 2007, Respondent Slotnick (hereinafter "the trustee") was named a trustee of the property. At the same time, petitioner was assigned the beneficial interest in the lien on the property. Thereafter, the Garretts defaulted on their note; the amount due on the note was $101,000.

Following the Garretts' default, and at petitioner's request, the trustee placed a notice of sale in a local newspaper which said, in part: "TERMS OF SALE: *CASH ONLY*. PAYABLE IN FULL AT TIME OF SALE[.]" (Emphasis added. Capitalization in the original.) The notice also reserved the right of the trustee to reject any and all bids.

Respondent Sayre (hereinafter "respondent") attended the February 22, 2012, foreclosure sale with his attorney. In the minutes before the sale, respondent's attorney spoke with the trustee to inquire about the note being foreclosed. During that conversation, respondent's attorney asked the trustee whether he would accept a bank check as payment for the property. The trustee replied, "No, you have to have cash. You have to have green backs." Respondent claims that this was the first time he was notified that payment was to be made in U.S. currency. In response, respondent informed the trustee that he had a line of credit from a local bank and could pay for the property with a bank check within five or ten minutes after the sale.

The trustee began the sale by informing those present that the only acceptable payment was U.S. currency and that payment was to be delivered "at the instant" the sale was "knocked down." Petitioner bid $103,000 for the property. On respondent's behalf, respondent's attorney bid $103,100. Petitioner then displayed a sealed garbage bag to the crowd that allegedly contained $225,000 in U.S. currency; thereafter, petitioner bid $105,000. Respondent's attorney responded with a $105,100 bid on behalf of his client. Respondent's $105,100 bid was the highest bid. However, the trustee rejected it because respondent could not pay instantly in U.S. currency. There being no further bids, the trustee awarded the property to petitioner.

Following the foreclosure sale, the trustee executed a special warranty deed that conveyed the property to petitioner. Of the $105,000 paid by petitioner for the property, the trustee received $5,000 toward his attorney's fees for the instant case and was reimbursed for the costs of the sale. Petitioner received the remainder.

On March 12, 2012, respondent filed the instant action against petitioner and the trustee claiming breach of fiduciary duty and breach of contract. Respondent sought the equitable remedy of specific performance, i.e., a deed to the property in exchange for $105,100. Petitioner responded with a motion to dismiss respondent's lawsuit. By order entered May 14, 2012, the circuit court dismissed respondent's claim for breach of fiduciary duty. Thereafter, both sides filed motions for summary judgment on the breach of contract claim, which the circuit court denied.

The trial on respondent's breach of contract claim commenced on February 5, 2013. At the close of respondent's case-in-chief, the circuit court denied petitioner's motion for judgment as a matter of law. Thereafter, petitioner and the trustee admitted that their evidence was the same as respondent's (with the exception of the evidence provided by respondent's expert). The circuit court then found that there were no factual issues in dispute and granted summary

judgment in favor of respondent. The circuit court also rescinded petitioner's deed for the subject property and ordered that respondent was entitled to specific performance. Following the circuit court's ruling, petitioner and the trustee proffered their testimony.

The circuit court's ruling was memorialized in a "Judgment Order" entered March 21, 2013. In the order, the circuit court found that (1) the first time any bidder knew that "cash only" meant "U.S. currency" was at the foreclosure sale; (2) petitioner had been the trustee's client for many years before the sale; (3) petitioner was the only bidder who brought U.S. currency to the sale; and (4) respondent did have a line of credit sufficient to meet his bid of $105,100, and a teller was on-call ready to deliver, within minutes, payment by bank check. The circuit court then concluded that (1) the trustee had a duty to maximize the price for the property; (2) payment by U.S. currency was not required by the deed of trust or announced in the notice of sale; (3) payment by U.S. currency at the "instant" the sale was "knocked down" was not commercially reasonable; (4) petitioner and the trustee colluded to ensure that only petitioner could submit a conforming bid; and (5) the foreclosure sale was conducted in violation of the terms of the deed of trust and Chapter 38, Article One of the West Virginia Code.

On appeal to this Court, petitioner challenges the circuit court's award of summary judgment in favor of respondent.

Pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment should be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). We accord a plenary review to the circuit court's order granting summary judgment: "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Finally, in considering a motion for summary judgment, we review all facts and inferences in the light most favorable to the nonmoving party. *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59-60, 459 S.E.2d 329, 336-37 (1995).

With these standards in mind, we review petitioner's assignments of error. Petitioner's first assignment of error is that the circuit court erred in finding that a contract was formed between the trustee and respondent at the foreclosure sale because the trustee and respondent never mutually assented to the type of consideration for the property (i.e., U.S. currency versus a bank check).

The circuit court did not err in granting summary judgment in favor of respondent because a contract was clearly formed between the trustee and respondent. The record on appeal shows that the trustee made an offer by publishing the notice of sale of the subject property, and by holding the foreclosure sale. The record also clearly shows that respondent accepted the offer by placing the highest bid, which he would have been able to pay in full within minutes after the sale was "knocked down." In Syllabus Point One of *First National Bank of Gallipolis v. Marietta*

3

*Manufacturing Co.*, 151 W.Va. 636, 153 S.E.2d 172 (1967), we defined a contract as an offer and an acceptance supported by consideration.

Petitioner next argues that the term "cash" as found in the deed and the notice of sale meant "U.S. currency" only. West Virginia Code § 38-1-5 provides that the "sale [of a trust lien deed] shall be made upon such terms as are mentioned in such deed." Here, the deed required only that payment be made "in cash." Thus, neither the deed of trust nor the notice of sale required payment in "U.S. currency." Moreover, respondent presents no legal authority that "cash" is defined in the law as meaning only "U.S. currency." The trial court properly relied on accepted legal authority, including *Black's Law Dictionary*,[3] in determining that "cash" may be defined as U.S. currency *and* many other things, including bank checks. Although petitioner cites to American Jurisprudence and other legal sources for the definition of "cash," none of these sources have been adopted in West Virginia's jurisprudence.

Petitioner also argues that the circuit court erred in finding that respondent had a line of credit available on the date of the foreclosure sale because the record contains evidence to the contrary. We disagree. The record on appeal supports the circuit court's findings. At trial, an employee from respondent's bank offered uncontested testimony that, on the date of the sale, respondent had a line of credit of at least $105,100; a bank teller from respondent's bank was ready to deliver a bank check to the trustee on respondent's behalf immediately after the sale; and respondent's line of credit was not withdrawn until after the sale at respondent's request.

Petitioner's second assignment of error is that the circuit court impermissibly applied Chapter Thirty-Eight, Article One of the West Virginia Code to extend protections to a bidder at a foreclosure sale when the intent of that Article is to protect only debtors and creditors. Respondent counters that petitioner's rendering of the bidder as a nonentity overlooks the importance of the bidder in the foreclosure sale process, and that without a healthy pool of bidders, the interests of both creditors and debtors will fail.

Although petitioner raises this assignment of error, he fails to support it. For example, he fails to cite to any particular section in Chapter Thirty-Eight, Article One, and fails to state how that Article protects debtors or creditors or excludes protection for purchasers. Instead, petitioner merely restates the same arguments he made for his first assignment of error, which we have rejected. "On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973). Because petitioner fails to meet this burden, we cannot say that the circuit court erred.

---

[3]In the order on appeal, the circuit court said: "'Cash' is, however, defined in *Black's Law Dictionary* (8th Edition) as 'money or the equivalent; usually ready money. Currency and coins, negotiable checks, and balances in bank accounts.' *Black's Law Dictionary* is recognized by State and Federal Courts as an authoritative source for definitions of words commonly found in statutes and case law. ***See, e.g., Arneault v. Arneault***, 639 S.E.2d 720 (W.Va. 2006)." (Boldface letters in original.)

4

Upon a careful review of the parties' briefs and the record on appeal, and in light of the standard requiring this Court to view all facts and inferences in the light most favorable to the non-moving party, we conclude that the circuit court correctly found no genuine issue as to any material fact and that respondent was entitled to a judgment as a matter of law. We hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  November 22, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Margaret L. Workman