511 S.E.2d 134

STATE of West Virginia ex rel. UNITED ASPHALT SUPPLIERS, INC., Petitioner,

v.

Honorable David H. SANDERS, Judge of the Circuit Court of Berkeley County; Martinsburg L.L.C.; Giant Food Stores, Inc.; Richard D. Poole, Inc.; and United Paving, Inc., A West Virginia Corporation, Respondents.

No. 25319.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 10, 1998.
Decided Dec. 10, 1998.

Susan Snowden, Esq., Douglas S. Rockwell, Esq., Joseph L. Caltrider, Esq., Martin & Seibert, Martinsburg, West Virginia, Attorneys for Petitioner.

Michael D. Lorenson, Esq., Bowles, Rice, McDavid, Graff & Love, Martinsburg, West Virginia, David Flores, Esq., Harmon & Davies, P.C., Lancaster, Pennsylvania, Attorneys for Martinsburg L.L.C., Giant Food Stores & Richard D. Poole.

WORKMAN, Justice:

Petitioner United Asphalt Suppliers, Inc. ("United Asphalt") seeks a writ of prohibition in connection with the March 19, 1998, order of the Circuit Court of Berkeley County directing it to participate in arbitration proceedings. As a nonsignatory to any contract containing an arbitration clause, Petitioner

1. The Contractor's failure to pay on the asphalting contract with United Paving stems from its contention that the work performed was defective and had to be corrected by another entity.

argues that it should be permitted to seek redress in a judicial forum. Having thoroughly reviewed this matter, we conclude that the lower court erred in ordering United Asphalt, as a nonsignatory to any arbitration agreement, to resolve its dispute through arbitration. Accordingly, we determine that Petitioner is entitled to a writ of prohibition.

## I. FACTS

On September 15, 1995, Martinsburg, L.L.C. (hereinafter referred to as "Owner" or "Respondent") and Giant Food Stores (hereinafter referred to as "Lessor" or "Respondent") entered into a contract with Richard Poole, Inc. (hereinafter referred to as "Contractor" or "Respondent") to build a supermarket in Martinsburg, West Virginia. The Contractor entered into a subcontract with United Paving to pave the parking lot area of the grocery store. The Petitioner in this case, United Asphalt, sold United Paving the asphalt materials used to pave the parking lot. When Contractor failed to pay United Paving under the subcontract,[1] Petitioner filed a mechanic's lien on January 17, 1997, against Owner and Lessee for the cost of the materials it had supplied to United Paving.

Petitioner initiated a civil action in circuit court to recover the $124,717.38 plus interest that it had incurred in material outlays. At the same time that Petitioner instituted its suit, United Paving filed a separate civil action against Owner, Lessee, and Contractor to recover on the subcontract. By order dated March 19, 1998, the circuit court consolidated the two actions seeking recompense for the asphalting of the parking lot. As part of the consolidation order, the lower court stayed further proceedings before that tribunal pending AAA arbitration proceedings between Contractor and United Paving. In addition, the circuit court ordered Petitioner to participate in the arbitration proceeding.[2] Petitioner seeks a writ of prohibition to prevent enforcement of the lower court's directive which required United As-

2. This ruling was in response to Respondents' motion to require United Asphalt to arbitrate its claims.

phalt to resolve its claims through arbitration.

## II. Standard of Review

■ We recently set forth the applicable standard of review for writs of prohibition that do not involve jurisdictional concerns:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996). Petitioner asserts that prohibition is required in this case because there is no adequate remedy by appeal as the lower court's ruling is interlocutory in nature. In addition, United Asphalt contends the lower court erred in directing it to participate in arbitration based on the fact that it never signed an agreement that contained an arbitration clause.

## III. Discussion

■ This Court has recognized in syllabus point one of *Board of Education v. W. Harley Miller, Inc.,* 159 W.Va. 120, 221 S.E.2d 882 (1975), that "[b]y their contract, parties may lawfully make the decision of

arbitrators or any third person a condition precedent to a right of action upon the contract." *Accord, State ex rel. Center Designs, Inc. v. Henning,* 201 W.Va. 42, 491 S.E.2d 42 (1997). The parties are in agreement that the construction contract entered into between Contractor and Owner and Lessor as well as the subcontract between Contractor and United Paving each contained arbitration clauses. The issue presented by this case is whether United Asphalt can be forced to participate in arbitration proceedings arising under contractual agreements to which it was not a signatory.

Petitioner maintains that it is hornbook law that "mutuality of assent is an essential element of all contracts." *Bailey v. Sewell Coal Co.,* 190 W.Va. 138, 140, 437 S.E.2d 448, 450 (1993) (quoting *Wheeling Downs Racing Ass'n v. West Virginia Sportservice, Inc.,* 158 W.Va. 935, 216 S.E.2d 234 (1975)). Since United Asphalt never agreed to submit its claims to arbitration, Petitioner argues that it cannot be required to resolve its claims through arbitration. Citing the recent decision of the United States Supreme Court in *Air Line Pilots Association v. Miller,* 523 U.S. 866, 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998), Petitioner asserts that "[o]rdinarily, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" 523 U.S. at ——, 118 S.Ct. at 1767 (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Consequently, "a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute...." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

Respondents argue that the lower court correctly referred Petitioner's claims to arbitration based on the identity of interest between United Asphalt and United Paving. Based on the fact that the same individual— Joe Dugan—owns and operates both United Asphalt and United Paving, Respondents contend that United Asphalt's claims are subject to arbitration.[3] In support of its

---

3. Respondents state additionally that United Paving admitted in the sister suit (97–C–339) that its

position, Respondents cite the decision of the Fourth Circuit Court of Appeals in *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315 (4th Cir.1988), in which the court ruled that claims against the parent company could be referred to arbitration even though the parent company was not a party to the arbitration agreement. *Id.* at 320–21. The court reasoned that "[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable," arbitration is permissible with regard to the nonsignatory party. *Id.* In explanation of its ruling the Court of Appeals stated, " '[i]f the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.' " *Id.* at 321 (citing *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir.1976)).

■ The *J.J. Ryan* case is frequently cited as authority for the existence of a well-recognized exception to the rule that only parties who have actually signed an agreement containing an arbitration clause can be forced to arbitrate their claims. *See Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776–79 (2nd Cir.1995) (discussing five theories for binding nonsignatories to arbitration agreements and stating that "[t]his Court has made clear that a nonsignatory party may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency' "); *Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1432 (M.D.Ala.1997); *Goodwin v. Ford Motor Credit Co.*, 970 F.Supp. 1007, 1016 (M.D.Ala.1997); *Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co.*, 933 F.Supp. 1170, 1179 (S.D.N.Y.1996); *Hinson v. Jusco Co.*, 868 F.Supp. 145, 149

(D.S.C.1994). As the district court explained in *Wilson v. Waverlee Homes, Inc.*, 954 F.Supp. 1530 (M.D.Ala.), *aff'd*, 127 F.3d 40 (11th Cir.1997) "[t]here are instances, and cases, where nonsignatories to arbitration clauses may be equitably compelled to pursue their claims against a defendant in arbitration." *Id.* at 1534; *cf. Dickinson v. Chris Myers Pontiac–Nissan–GMC, Inc.*, 711 So.2d 984, 989 (Ala.1998) (discussing distinction made by Second Circuit Court of Appeals in *Thomson–CSF, supra*, between cases in which signatory seeks to avoid arbitration with nonsignatory who is attempting to resolve issues intertwined with agreement containing arbitration clause and those in which signatory seeks to compel nonsignatory to arbitrate).

■ While a clear exception to the rule against compelling nonsignatories to arbitrate does exist, the limited record upon which this case was submitted does not permit us to even consider whether that exception applies under the facts of this case. Although Respondents rely almost exclusively on the alleged similar identity in interests of United Asphalt and United Paving to support their contention that arbitration is proper,[4] the record before us contains nothing other than a bare assertion of such identity in corporate interests.[5] We are understandably reluctant to accept such allegation as true without an affidavit or other document evidencing the alleged similarity of ownership interest that Respondents avow.

■ Despite the recognized exception to the rule requiring express assent to require arbitration, there is equally "[p]ersuasive authority . . . that a . . . court is not required to compel arbitration between parties who have

claim for $142,135 included $124,717.38 worth of materials supplied to it by United Asphalt. Further, Respondents observe that the reason United Asphalt has not brought suit against United Paving is because it would have been suing itself. In its responses to interrogatories submitted to it by Respondents, however, United Asphalt denied that it refrained from suing United Paving based on Joe Dugan's ownership interests in United Paving and United Asphalt.

4. Respondents also assert the policy-based contention that the Contractor may be forced to

relitigate issues with United Asphalt in circuit court that have already been resolved, possibly to its favor, in arbitration. In addition, Respondents argue that arbitration is proper because United Asphalt alleged its claim with reference to the construction subcontract in its complaint.

5. Moreover, although Respondents represent in their brief that Joe Dugan owns and operates both United Asphalt and United Paving, a review of United Asphalt's answers to Respondents' interrogatories indicates that Mr. Dugan is "principal and part owner" of both of those companies.

**28**

not agreed to such arbitration." *Collins v. International Dairy Queen, Inc.,* 169 F.R.D. 690, 693 (M.D.Ga.1997). The court in *Collins* stated:

> Federal policy favors arbitration over litigation and requires a district court to resolve any doubt about the application of an arbitration clause in favor of arbitration. Nevertheless, this policy "cannot serve to stretch a contract beyond the scope originally intended by the parties." The policy favoring arbitration does not compel the court to require arbitration of disputes if arbitration was not the intent of the parties.

*Id.* at 694 (citations omitted and quoting *Seaboard Coast Line Ry. Co. v. Trailer Train Co.,* 690 F.2d 1343, 1348 (11th Cir.1982)). Finding no basis for departing from well-established principles concerning arbitration in this case, we hold that a court may not direct a nonsignatory to an agreement containing an arbitration clause to participate in an arbitration proceeding absent evidence that would justify consideration of whether the nonsignatory exception to the rule requiring express assent to arbitration should be invoked.

Based on the foregoing, a writ of prohibition is issued prohibiting enforcement of the March 19, 1998, order entered by the Circuit Court of Berkeley County directing United Asphalt to participate in arbitration proceedings.

Writ granted.

Chief Justice DAVIS, Justices MAYNARD, STARCHER and McCUSKEY joined in the opinion of this court.

Justice McGRAW did not participate in the decision of this case.